Jones, J.
(dissenting). Because the decision of the majority in this case marks a significant departure from our recent writings and because the responsibility of the Trial Judge in cases involving joint representation should be made clear I am obliged to dissent.
This case presents the latest in a series of recent cases in which we have been called on to determine whether a defendant has been deprived of his constitutional right to effective assistance of counsel by reason of the fact that he and his codefendant have been represented by the same attorney. This defendant and his brother were represented by a single attorney at the trial of an indictment charging them, while acting in concert, with attempted murder in the second degree and assault in the first degree. Defendant was convicted of assault, first degree, and his brother was acquitted.
As the majority accurately states, the trial court expressly informed the two defendants both of the fact that there was the possibility of a conflict of interest and that such possibility arose from the circumstance that defendant’s brother came on the scene at a point late in time. Also, the trial court was informed by defendant’s attorney that he had discussed the possibility of a conflict of interest with his attorney-father who "had spoken to both the defendants and then he related it onto me that everything was explained to them and the possibility of a conflict”. It is equally clear that both defendants indicated that it was their wish to proceed to trial with *113 the same attorney, notwithstanding the possibility of a conflict of interest.
I had supposed that we had established the obligation of the trial court to ascertain on the record, before permitting defendants to proceed to trial with a single attorney, not only that each was aware of the possibility of a conflict in interest, but also that each "was cognizant of the potential risks inherent in the simultaneous representation of codefendants” (People v Macerola, 47 NY2d 257, 262; see People v Gomberg, 38 NY2d 307). In this instance, although the trial court expressly alerted the defendants to the fact that there existed the possibility of a conflict of interest, he did not himself explain the particulars or potential pitfalls of joint representation. The majority holds, however, that, in vievs) of the attorney’s statement, the trial court was required to go no further.
Very recently and subsequent to our decision in People v Ortiz (49 NY2d 718) on which the majority rely, we wrote, "[although the trial court may place some reliance on the statement by counsel that he has informed his clients of the pitfalls of joint representation and gotten their consent * * * such a statement alone does not relieve the trial court of the obligation 'independent of the attorney’s obligation’ * * * to probe the defendants’ awareness of the risks in the manner suggested by our discussion in Macerola. ” (People v Baffi, 49 NY2d 820, 822.) In this instance there was nothing other than the attorney’s conclusory statement on which the trial court could rely in the discharge of its . responsibility to defendant. Beyond confirmation that the defendants had been alerted to the fact' of possible conflict of interest, there could be no assurance that the details of the potential risks involved had been described to them or that they had each made an informed decision to proceed with a single attorney. The attorney’s discussion with his clients was related only in summary fashion; no particulars were furnished the court. Indeed, the fact that the attorney considered representation of one defendant by his partner-father and representation of the other by him an acceptable solution suggests that he himself máy not have fully perceived the essence of the right to independent representation.
We have indicated that a court may, in proper circumstances, rely at least to some extent on the participation of counsel in the protection of the rights of the defendant, as where, for instance, the court is satisfied that the attorney- *114 client discussions alone or as supplemented by the court have adequately informed the defendant of the "pitfalls” and "potential risks”, as distinguished from the fact, of possible conflict of interest, and that the defendants have each made an informed decision. It is the obligation of the court, on the record, to make certain that the interests of the defendant have been adequately protected. The record in this case does not give the assurance that we have previously required.
The majority lays stress on the argument that to require the court to make certain that the defendant comprehends the particulars of the risks attending joint representation might result in an improper invasion of the confidentiality of the attorney-client relationship (p 111). We have noted that this is a consideration to be weighed by the trial court (People v Gomberg, 38 NY2d 307, 313, supra). Although the trial court should certainly be sensitive to the situation, the right to be free from improper intrusion is the defendant’s to assert. It ill becomes the prosecution to seek to justify what may have been a failure to protect the constitutional rights of the defendant on the ground that the defendant might not have wished to have such protection, particularly where, as here, the defendant is vigorously protesting that he was denied that very protection. A different situation would be presented if it appeared that the defendant opposed further inquiry by the trial court. There is nothing in the record here, however, to suggest that such was the cáse in this instance.
It would remain then, in my view, to be determined whether, there having been no sufficient discharge of the responsibility of the trial court, defendant has demonstrated "an actual conflict of interest 'or at least the significant possibility thereof ”. (People v Baffi, 49 NY2d 820, 822, supra.) It would only be in such event that defendant would be entitled to a new trial. While there is no proof in this case of actual conflict, I am satisfied that there existed a significant possibility of conflict.
There was proof that defendant had trailed and accosted a young lady as she walked to work in the early morning; that a passing friend responded to her request to be driven back home; that they were followed by defendant in his car; that when both cars stopped at a traffic light the other driver got out of his car and went back to defendant’s car; that defendant got out of his car with a bat or stick in his hand; that an altercation followed during the course of which defendant’s *115 brother came out of his.house and joined the melee; that the other driver suffered fractures of the skull and wrists and that 19 sutures were needed to close his wounds. At trial defendant asserted the defense of justification and testified that his brother did not participate in the fight — testimony at variance with that of the victim and an independent eyewitness. It would seem that defendant should have been advised of the risk involved — that, while such testimony might exculpate his brother it would cast serious doubt on all his own testimony, including the credibility of his defense of justification. Any such advice, however, would have been adverse to the interests of the codefendant. The brother’s testimony related only to his own exculpation.
Whenever the active parts allegedly played by two defendants acting in concert in a single criminal transaction are different in nature, extent, origin and duration, and the strategies and tactics of their separate defenses may be different and even inconsistent, it must be concluded that there exists a significant possibility of prejudice to each when both are defended by the same attorney. This conclusion is not negated in this case by the fact that it appears that it was the brother rather than defendant whose interests were more likely to have been prejudiced or the circumstance that the verdicts demonstrate that the jury did differentiate as to the relative responsibilities of the two defendants.
For the reasons stated, I would reverse the order of the Appellate Division, vacate defendant’s conviction, and remit the case to Supreme Court for further proceedings on the indictment.
Chief Judge Cooke and Judges Jasen and Gabrielli concur with Judge Wachtler; Judge Jones dissents and votes to reverse in a separate opinion in which Judges Fuchsberg and Meyer concur.
Order affirmed.