People v Galindo (2026 NY Slip Op 00965)

People v Galindo

2026 NY Slip Op 00965

Decided on February 19, 2026

Court of Appeals

Wilson, Ch. J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 19, 2026

No. 2 

[*1]The People & c., Respondent,
vCarlos Galindo, Appellant.

Hannah Gladstein, for appellant. 
Christopher J. Blira-Koessler, for respondent. 

WILSON, Chief Judge:

On appeal, Carlos Galindo challenges his convictions on two traffic infractions: Unlicensed Operation of a Motor Vehicle (Vehicle and Traffic Law § 509 [1]) and Consumption or Possession of Alcoholic Beverages in Certain Motor Vehicles (id. § 1227 [1]). Mr. Galindo argues that the trial court erred when it failed to read a jury note verbatim as required by People v O'Rama (78 NY2d 270 [1991]) and its progeny. More specifically, Mr. Galindo contends that the court's misstatements and omissions of the content of the jury note deprived him of meaningful notice of the nature of the jury's confusion about the Criminal Jury Instructions' (CJI) definition of "operates" as the term is used in the Vehicle and Traffic Law, requiring reversal of the unlicensed operation charge. We agree and reverse the order with respect to the unlicensed operation charge on that basis. We do not reach the merits of Mr. Galindo's argument that the trial court erred in denying his request for a specific jury instruction on the elements of "operates."
Based on a misreading of People v Burwell (53 NY2d 849 [1981]), Mr. Galindo also challenges his consumption conviction. Where an accusatory instrument contains several charges, but there is only a legal basis to reverse a conviction as to one charge, Burwell does not require this Court to dismiss the entire accusatory instrument [*2]or reverse the conviction as to the charges where there is otherwise no legal basis to reverse. Accordingly, we agree that Mr. Galindo was properly convicted on the consumption charge.I.
Carlos Galindo testified that he was visiting his children and ex-wife in Queens for the holiday season in December 2013. According to his testimony, around 1:00 a.m. on January 4, so as not to disturb his family members inside the house, he decided to listen to music in his car, which was parked a couple of houses down by a fire hydrant. That night the wind chill was close to zero degrees, it was snowing, and the vehicle was surrounded by snowbanks. Mr. Galindo sat in the driver's seat and put the key in the ignition to start the engine. Mr. Galindo's eldest son testified that he joined him for approximately thirty minutes to talk, saw that his father was falling asleep, and encouraged him to follow him back into the house.
At approximately 3:30 a.m., two police officers on patrol noticed a car parked at a fire hydrant about two feet away from the sidewalk, with the engine running and the headlights on. The officers did not initially stop, but stopped 15 minutes later upon seeing the car in the same spot with the engine still running. Peering into a window, the officers observed Mr. Galindo passed out behind the wheel, a little slouched forward, with an open bottle of beer in his hand. When Mr. Galindo did not respond to knocks on the car window, an officer opened the door on the driver's side, felt the heat blowing inside the car, and heard the radio playing. In response to questioning, Mr. Galindo stated that he had consumed six beers that evening. Mr. Galindo testified that he tried to explain to the officers, in Spanish, that he was not driving, but that the officers did not understand him. According to Mr. Galindo's son, after noticing the patrol car lights, he went outside and attempted to explain to the officers that he had just been with his father, who had not driven, and the car was stuck in the snow. At the precinct, Mr. Galindo reiterated that he was not driving. Mr. Galindo was charged with aggravated driving while intoxicated (Vehicle and Traffic Law § 1192 [2-a] [a]); driving while intoxicated per se (id. § 1192 [2]); driving while intoxicated (id. § 1192 [3]); parking within 15 feet of a fire hydrant (id. § 1202 [3] [b]); consumption of alcoholic beverages in certain motor vehicles (id. § 1227 [1]); and unlicensed operation of a motor vehicle (id. § 509 [1]).
Trial commenced in April 2016. Mr. Galindo contended that, while he had entered the car and started the engine to turn on the heat and listen to music without bothering his family, he did not move the car and had no intention of doing so. The People argued that Mr. Galindo had either moved or intended to move the car. At the conclusion of trial, the County Court gave the New York model Criminal Jury Instruction ("CJI") for each charge. For the four counts with an operation element (Vehicle and Traffic Law § 1192 [2-a]; id. §§ 1192 [2]-[3]; id. § 509 [1]), the court provided the CJI definition of that term.[FN1]
The CJI instruction for the intoxication charges states:

"To operate a motor vehicle means to drive it. A person also operates a motor vehicle when such person is sitting behind the wheel of a motor vehicle for the purpose of placing the vehicle in motion and when the motor vehicle is moving, or even if it is not moving, the engine is running."[FN2]
The CJI instruction for the unlicensed operation charge is slightly different, and includes the term "either" (marked in bold), although it cites to the same authority as the intoxication charges:

"To operate a motor vehicle means to drive it. A person also operates a motor vehicle when such person is sitting behind the wheel of a motor vehicle for the purpose of placing the vehicle in motion, and when either the motor vehicle is moving, or even if it is not moving, the engine is running" (emphasis added).[FN3]
The trial transcript reflects that when the court read the CJI instruction for the unlicensed operation charge, it replaced "or" in the final clause with "and."
Shortly after the jury began deliberations, it sent a note asking for clarification on the operation element. The court called the parties back into the courtroom and read the note into the record as follows:"We the jury would like clarification on the law regarding the first three charges. There is a portion that states the operation is intent to move the vehicle. There was, however, another segment. That segment, stated that operation is if the engine is running."

When it read the note to the parties it omitted a question from the jury (marked in bold). The full note stated:

 "We would like clarification on the law regarding the first 3 charges. There is a portion that states that operation is intent to move the vehicle. There was however another segment that segment that stated that operation is if the engine is running. Are both correct?" (emphasis added).
The parties were not made aware of this omission. The court suggested that, if the parties agreed, it would re-read "that portion of operation" to the jury. Both parties agreed to that procedure. In the same note, the jury also asked a question about the instruction for consumption of alcoholic beverages in vehicles. When the court read this portion of the note aloud, the court again altered the jury language. The court stated:

"And, then they also said the law for consumption of alcohol beverages in certain motor vehicles does not seem to contain a section that includes solely the engine running, which is also correct, and I will just read them that charge. Is that acceptable?"
But the note read:
"Also, the law for [Consumption] of Alcoholic Beverages in certain motor vehicles does not seem to contain the section that includes solely the engine is running. Is this also correct?" (emphasis added).

The court brought the jury back in and the re-read the same CJI instruction on the definition of operation for the intoxication charges. The court also re-read the same charge it had provided for the consumption charge.
The jury acquitted Mr. Galindo of aggravated driving while intoxicated and parking within 15 feet of a hydrant. The jury convicted Mr. Galindo of two misdemeanor counts of operating a motor vehicle while intoxicated (Vehicle and Traffic Law § 1192 [2], [3]), and the two traffic infractions: consumption of alcoholic beverages in certain motor vehicles (id. § 1227 [1]) and unlicensed operation of a motor vehicle (id. § 509 [1]).
Defense counsel filed a motion to set aside the verdict pursuant to CPL 330.30 (1), which the court denied. Mr. Galindo was sentenced to a one-year conditional discharge, which was completed on May 24, 2017.
The Appellate Term reversed the judgment and granted Mr. Galindo's motion to dismiss pursuant to CPL 30.30 (People v Galindo, 70 Misc 3d 16, 17 [App Term, 2d Dept, 2nd, 11th, & 13th Jud Dists 2020]). This Court [*3]reversed the order on the speedy trial issue and remitted the case to the Appellate Term for consideration of the issues raised but not determined, namely, the traffic infractions at issue on this appeal (People v Galindo, 38 NY3d 199, 201, 207-08 [2022]).
In the order now appealed from, the Appellate Term affirmed Mr. Galindo's convictions of the two traffic infractions (People v Galindo, 78 Misc 3d 134 [A], *2 [App Term, 2d Dept, 2nd, 11th, & 13th Jud Dists 2023]; see Vehicle and Traffic Law § 1227 [1]; id. § 509 [1]). A Judge of this Court granted Mr. Galindo leave to appeal (42 NY3d 1019 [2024]).II.
A mode of proceedings error occurs, and automatic reversal is required, "[w]hen a trial court paraphrases a jury note or omits a key term, thereby failing to provide counsel with meaningful notice of the precise content of a substantive juror inquiry" (People v Nealon, 26 NY3d 152, 157 [2015], citing People v Walston, 23 NY3d 986, 990 [2014]; see also People v Tabb, 13 NY3d 852, 853 [2009]; People v Kisoon, 8 NY3d 129, 135 [2007]). "[M]eaningful notice means notice of the actual specific content of the juror's request" (People v Morrison, 32 NY3d 951, 952 [2018] [internal quotation marks and citation omitted]). When a court fails to read a note verbatim, it "deprive[s] counsel of the opportunity to accurately analyze the jury's deliberations and frame intelligent questions for the court's response" (Nealon, 26 NY3d at 157 [internal quotation marks and citation omitted]). In People v O'Rama we articulated the procedure courts should employ to ensure the parties receive meaningful notice of a jury request:
"[J]urors' inquiries must generally be submitted in writing, since, as the trial court in this case recognized, written communications are the surest method for affording the court and counsel an adequate opportunity to confer. Further, whenever a substantive written jury communication is received by the Judge, it should be marked as a court exhibit and, before the jury is recalled to the courtroom, read into the record in the presence of counsel. Such a step would ensure a clear and complete record, thereby facilitating adequate and fair appellate review. After the contents of the inquiry are placed on the record, counsel should be afforded a full opportunity to suggest appropriate responses . . . the trial court should ordinarily apprise counsel of the substance of the responsive instruction it intends to give so that counsel can seek whatever modifications are deemed appropriate before the jury is exposed to the potentially harmful information. Finally, when the jury is returned to the courtroom, the communication should be read in open court so that the individual jurors can correct any inaccuracies in the transcription of the inquiry and, in cases where the communication was sent by an individual juror, the rest of the jury panel can appreciate the purpose of the court's response and the context in which it is being made" (78 NY2d 270, 277-78 [1991]).
Reversal, in this context, does not require a showing of "specific prejudice" (id. at 279). Prejudice is presumed "since the decision to withhold the contents of the juror's note" deprives the defendant of "the opportunity to have input, through counsel or otherwise, into the court's important, substantive juror inquiry" (id. at 279-280). Additionally, "[w]here the record fails to show that defense counsel was apprised of the specific, substantive contents of the note . . . preservation is not required" (Walston, 23 NY3d at 990).
The court's failure to read the jury note verbatim, or otherwise create a record demonstrating that the parties had received a copy of the note, deprived Mr. Galindo of meaningful notice of the precise contents of the substantive jury note. By omitting the question "Are both correct?", the court obscured the nature of the jury's inquiry with respect to the "operates" element shared by the three counts of intoxication and the unlicensed operation charge. The jury's question strongly suggests it wanted to know whether the "operates" instruction contained two distinct conditions either one of which could satisfy the "operates" element. Put differently, the jury's question crystallizes its inquiry: whether intent to move the vehicle was necessary or a running engine was sufficient to meet the definition of operation. Had Mr. Galindo been accurately apprised of the contents of the jury note, he would have [*4]had the opportunity to provide input into how the court resolved the jury's inquiry. Instead, Mr. Galindo was deprived of meaningful notice, and rereading the original CJI instruction responsible for the jury's initial confusion did not adequately address the jury's question.
We are unpersuaded by the People's argument that the jury note does not pertain to the unlicensed operation charge. It is true that the jury note asks about the element of operation as to "the first 3 charges" (Driving While Intoxicated Per Se, Aggravated Driving While Intoxicated, and Driving While Intoxicated), whereas unlicensed operation was specified at count 5 of the indictment. But because the same operation element overlaps among all these charges, the court's response to this question informed the jury's deliberations as to the unlicensed operation charge, too, and so the error still deprived Mr. Galindo of meaningful notice as to unlicensed operation. This case is therefore unlike those cases in which we have refused to reverse under O'Rama where a misread jury note was limited to charges not challenged on appeal (see Walston, 23 NY3d at 990; People v Silva, 24 NY3d 294, 301 n 2 [2014]; People v Lamb, 37 NY3d 1174, 1175 [2021]).
Mr. Galindo does not assert that the court's O'Rama violation requires reversal on the consumption charge (Vehicle and Traffic Law § 1227 [1]). Instead, he argues that our decision in Burwell requires us to dismiss the entire accusatory instrument including the consumption charge. We do not agree. In Burwell, we held that reversal was required because the trial court failed to ascertain whether a husband and wife represented by the same attorney were aware of his or her right to separate representation, raising a significant possibility that a conflict of interest arose from the joint representation (53 NY2d at 851). Where the legal basis for reversal affected all charges on the indictment, dismissal of the entire accusatory instrument was appropriate because the defendant had "already served her sentence and the charges against her involved relatively minor crimes" (id.). Burwell's full context therefore demonstrates why its decision that "the accusatory instrument should be dismissed in its entirety" does not require the same course in this case (id.). Here, because Mr. Galindo does not assert any independent legal infirmity as to his conviction on the consumption charge, we uphold his conviction on that charge. However, dismissal of the unlicensed operation count is warranted because Mr. Galindo has already served his sentence and there is no penological purpose for retrial on that traffic violation (see id. at 851; cf. People v Allen, 39 NY2d 916, 918 [1976]).
Accordingly, the order of the Appellate Term should be modified by dismissing the charge of unlicensed operation of a motor vehicle and, as so modified, affirmed.
Order modified by dismissing the charge of unlicensed operation of a motor vehicle and, as so modified, affirmed. Opinion by Chief Judge Wilson. Judges Rivera, Garcia, Singas, Cannataro, Troutman and Halligan concur.
Decided February 19, 2026

Footnotes

Footnote 1: The court declined to adopt Mr. Galindo's proposed charge on the operation element, which stated:"In order for you to find that the defendant 'operated' his motor vehicle as the term 'operation' is used in the Vehicle and Traffic Law, you must find more than that he simply occupied the motor vehicle with the motor running. You must find beyond a reasonable doubt that he started the motor 'for the purpose of putting the automobile into motion.' In other words, you must find, as a factual matter, beyond a reasonable doubt, that he intended to drive the vehicle and not merely occupy it."
Footnote 2:See CJI2d (NY) Vehicle & Traffic Law § 1192 (2-a), 
https://www.nycourts.gov/judges/cji/3-VTL/VTL_1192/1192%282-a%29%28a%29.pdf (last accessed January 8, 2026); CJI2d (NY) Vehicle & Traffic Law § 1192 (2),
https://www.nycourts.gov/judges/cji/3-VTL/VTL_1192/1192%282%29.pdf (last accessed January 8, 2026); CJI2d (NY) Vehicle & Traffic Law § 1192 (3), 
https://www.nycourts.gov/judges/cji/3-VTL/VTL_1192/1192%283%29.pdf (last accessed January 8, 2026)
Footnote 3:CJI2d (NY) Vehicle & Traffic Law § 509, 
https://www.nycourts.gov/judges/cji/3-VTL/VTL_509/VTL-509(1).pdf (last accessed January 9, 2025)